liable. New York Cent. & H. R. R. Co. v. City of Rochester, 127
N. Y. 591, 28 N. E. 416; Stoddard v. Village of Saratoga Springs,
127 N. Y. 261, 27 N. E. 1030; Chapman v. City of Rochester, 110
N. Y. 273, 18 N. E. 88; Noonan v. City of Albany, 79 N. Y. 470;
Bolton v. Village of New Rochelle, 84 Hun, 281, 32 N. Y. Supp. 442.

The defendant urges that as the extension was authorized by the
act, and was not negligently or unskillfully executed, the defendant
is not liable. The plaintiff does not complain of the construction,
but of the use which is made of it, to his injury. The act authoriz-
ing the extension undoubtedly authorizes its use, but not such use
as results in a nuisance. Seifert v. City of Brooklyn, 101 N. Y.
136, 4 N. E. 321; New York Cent. & H. R. R. Co. v. City of Roches-
ter, supra; Hooker v. City of Rochester, 37 Hun, 181, affirmed 107
N. Y. 676, 14 N. E. 610. Assuming the lawfulness of the construc-
tion, and the right to its use, the use, as was said in Booth v. Rail-
road Co., 140 N. Y. 268–275, 35 N. E. 592, after commenting upon
many cases, must not be to the injury of any legal rights of an-
other. The plaintiff's legal right to air and water in the purity
that existed before the defendant polluted them by sewage cannot
be questioned. If the defendant, by any right of eminent domain,
can take the right from the plaintiff, it must do so upon making
just compensation.

The judgment should be affirmed, with costs. All concur.

_____

(17 App. Div. 187.)

### ORVIS v. ELMIRA, C. & N. R. CO.

(Supreme Court, Appellate Division, Third Department. May 5, 1897.)

1. WATER COURSES—ACTION FOR OBSTRUCTING—PLEADING AND PROOF.
    A complaint to recover damages for flooding plaintiff's land alleged that
    the predecessor in title of defendant railroad company constructed an em-
    bankment over lands on both sides of a creek, with a bridge over the creek;
    that afterwards defendant rebuilt the bridge, and narrowed it so that in
    time of high water there was not sufficient space for the water to run
    through; that the bridge was improperly constructed, and, together with the
    embankment, caused large quantities of water to flow back on plaintiff's
    land; and that the obstruction was increased by the embankment; but it
    was not alleged that the embankment was improperly or illegally con-
    structed. _Held_, that under the complaint no recovery could be had for dam-
    ages caused by the embankment.
2. PAROL EVIDENCE—IDENTIFICATION OF PREMISES DESCRIBED IN DEED.
    Oral evidence may be received to locate the premises where words of gen-
    eral description are used in the deed.
    Landon, J., dissenting.

Appeal from circuit court, Chemung county.

Action by Emerson Orvis against the Elmira, Cortland & Northern
Railroad Company to recover damages for a nuisance. From a judg-
ment dismissing the complaint on the merits, with costs, plaintiff ap-
peals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

H. H. Rockwell, for appellant.

Reynolds, Stanchfield & Collin (Frederick Collin, of counsel), for
respondent.

PUTNAM, J.  This action was brought to recover damages arising from the construction of defendant's railroad bridge and embankment in the town of Horseheads, Chemung county, thereby causing an obstruction in the flow of the waters of Newtown creek, and the overflow of plaintiff's lands.  The complaint alleged: "That heretofore the Utica, Ithaca & Elmira Railroad Company constructed its railroad through said town of Horseheads, and across Newtown creek, and the low lands situate on either side thereof, and raised and constructed an embankment for its roadbed through the said lands adjoining said creek on either side thereof, from five to ten feet above the natural surface of the soil, and across the creek constructed a wooden bridge, having a space of about sixty feet, with a single row of piles to support the center of said space about the middle of said creek.  That in or about March, 1884, the defendant duly succeeded to all the property, roadbeds, bridges, and other appurtenances theretofore owned by said Utica, Ithaca & Elmira Railroad Company and its successors, and took possession thereof, and had ever since been using and operating said railroad and appurtenances."  That in the year 1885 the defendant rebuilt said bridge, and, in doing so, extended the abutments, and placed six rows of piles under the same, and thus narrowed and obstructed the channel, so that at times of high water there was not sufficient space for its natural flow.  Said bridge was negligently, unskillfully, and improperly constructed, and, together with the embankment above mentioned, caused large quantities of water to collect upon the land of plaintiff and others situate northerly of the bridge in time of high water.  The complaint further stated that on two occasions, in June, 1889, and once in November, 1889, sudden freshets occurred, and, in consequence of the negligent and improper construction of said bridge, the flow of the water in said Newtown creek was obstructed, the water was dammed up, and turned back on the lands north of the bridge.  Such obstruction was increased by the embankment of the defendant's railroad constructed across the low lands, and the great accumulation of water that should have had its outlet southerly through the channel of Newtown creek was thrown back, and caused to flow over the low land situate northerly of said railroad, including lands owned by the plaintiff.  The complaint does not allege that the embankment was negligently, improperly, or illegally constructed, or any notice to the defendant that it caused damage to the plaintiff, or any request to remove it.

The plaintiff sought to recover damages for the said flooding of his lands caused by said railroad bridge, which he averred was negligently and improperly constructed, and which flooding was increased by said embankment.  I think the complaint was not insufficient to allow the plaintiff to recover for damages caused by the embankment, because it failed to aver that such embankment was improperly, negligently, or illegally constructed, if otherwise showing defendant's liability therefor.  The action being to recover for an alleged nuisance, it was not necessary for the plaintiff to allege or show negligence on the part of the defendant or its grantor in constructing the embankment.  The action was not based upon negligence, but upon a wrongful and unauthorized act, in consequence of which the plaintiff sustained damage.  Clifford v. Dam, 81 N. Y. 52; Lamming v. Galusha

(Sup.) 17 N. Y. Supp. 328; notes to 25 Abb. N. C. 198, 199. The statutory authority conferred upon the defendant or its grantor to construct the bridge and embankment gave it no right to obstruct the flow of the water in Newtown creek, and cause the same to flow back on plaintiff's lands. Mundy v. Railroad Co.; 75 Hun, 479, 27 N. Y. Supp. 469. Hence the complaint, averring such obstruction of the flow of the water by the bridge and embankment, set forth a wrongful and unauthorized act on the part of the defendant and its grantors, —the creating of a nuisance.

The principal question in the case, and the only one I deem it necessary to discuss, arises out of certain rulings of the trial court as to evidence offered in regard to the defendant's responsibility for damage, if any, caused by the embankment in question. The plaintiff read in evidence a deed from Austin Corbin and J. Rodgers Maxwell, under which defendant claimed, and which conveyed:

"All the railroad of the said Utica, Ithaca & Elmira Railway Company in the state of New York, extending from Horseheads, in the county of Chemung, to Cortland, in the county of Cortland, in the state of New York, and its appurtenances, including the roadbed and superstructure and the right of way of said railroad, and all lands, real estate, rails, tracks, side tracks, bridges, viaducts, buildings, depots, station houses, car houses, engine houses, shops, warehouses, turntables, water stations, fences, structures, erectures, fixtures, and appurtenances, and all other things, of whatever kind, thereunto belonging or in any wise appertaining, or which have been or may be acquired or provided by said railroad company for use upon or in connection with the said railroad, and all continuations, branches, tracks, or extensions of said railroad to any depots, warehouses, or other structures."

It is impossible to determine from the description whether the deed conveyed the embankment or not. Such a description was sufficient to convey it if it in fact formerly belonged to the Utica, Ithaca & Elmira Railroad Company, or was acquired or provided by said company for use upon or in connection with said railroad. Durant v. Kenyon, 32 Hun, 634. It is held that, when words of general description are used in a deed, oral evidence may be resorted to to locate the premises conveyed. Coleman v. Improvement Co., 94 N. Y. 229; People v. Storms, 97 N. Y. 364; Pettit v. Shepard, 32 N. Y. 97.

One Rickey, a witness called by the defendant, testified that, being in the employ of the Utica, Ithaca & Elmira Railroad Company, he located the railroad at the place in question, and had charge of its construction. The plaintiff then sought to prove that said company, through said Rickey, constructed the embankment in question, and made the following offer:

"I propose to show by cross-examination of this witness that this railroad embankment, running from the bridge in suit all the way to and across the canal, was constructed at the same time that the bridge was constructed, under the supervision of this witness, while in the employ of the Utica, Ithaca & Elmira Railroad Company, the grantors of the defendant in this case; and that the U., I. & E. R. R. Co. surrendered this embankment and line of railroad to the defendant at the same time they surrendered that bridge and the rest of the railroad; and that this defendant has been operating said line of railroad ever since, in connection with the main line."

This evidence and offer were objected to by the defendant, and excluded, on the ground that they were incompetent; that they would

not show title or possession in the defendant. Had the evidence offered been received, it might have shown that the embankment in question was constructed by the Utica, Ithaca & Elmira Railroad Company, and provided by said company for use in connection with its railroad, and hence embraced within the description contained in said deed, and, therefore, that the defendant was the owner of the embankment. I should therefore be inclined to think that the exclusion by the trial court of the evidence and offer above referred to was error, were it not for the following reason: As above suggested, the complaint does not aver any notice to the defendant that the embankment caused damage to the plaintiff, or any request to remove it, nor on the trial was there any evidence of or offer to show such notice or request. The embankment had been constructed many years before, by defendant's grantor. It was not obviously a nuisance. It is held that a grantee of premises upon which there is a nuisance at the time the title passes is not responsible unless he has had notice thereof, and, in some cases, until he has been requested to abate the nuisance. Ahern v. Steele, 115 N. Y. 203–210, 22 N. E. 193.

In Woodman v. Tufts, 9 N. H. 88, it was held that:

"Where a dam was erected, and land flowed by the grantor of an individual, the grantee will not be liable for damage in continuing the dam and flowing the land as before, except on notice of damage, and request to remove the nuisance or withdraw the water."

In Johnson v. Lewis, 13 Conn. 303–307, it is said in the opinion of the court:

"Therefore, in Tomlin v. Fuller, 1 Mod. 27, although the court were unanimously of opinion that an allegation of a request was in that case necessary, and that the declaration, without it, was bad on demurrer, yet, on motion in arrest, they gave judgment for the plaintiff, because the defect was cured by verdict. How far proof of the injury resulting from a dam or other nuisance, made by the defendant, on his own property, may in any case be requisite, it is not now necessary to determine; but the law is well settled that a purchaser of the property on which a nuisance is erected is not liable for its continuance, unless he has been requested to remove it. This rule is very reasonable. The purchaser of property might be subjected to great injuries if he were made responsible for consequences of which he was ignorant, and for damages which he never intended to occasion. They are often such as cannot easily be known, except to the party injured. A plaintiff ought not to rest in silence, and finally surprise an unsuspecting purchaser by an action for damages, but should be presumed to acquiesce until he requests a removal of the nuisance."

The opinion in Ahern v. Steele, supra, contains an elaborate review of the cases bearing on the subject under discussion. And see, also, Wenzlick v. McCotter, 87 N. Y. 122.

The authorities cited are not in conflict with such cases as Irvine v. Wood, 51 N. Y. 224, which held that one who occupies and uses premises on which there is a dangerous and obvious nuisance is liable to any person injured thereby. In this case there was an embankment across low lands erected many years before by defendant's grantor. It was not obviously a nuisance. The defendant was authorized, in the absence of notice, to believe that the embankment was lawfully built, and was not bound to know that it caused damage to the plaintiff. There being no averment in the

complaint that the defendant had notice that the embankment caused damage, and no proof on the trial of such notice, it was of no consequence whether or not the embankment was the property of the defendant, and hence the plaintiff was not injured by the ruling of the trial judge above referred to. The plaintiff did, on the trial, offer to show possession and use of the embankment by the defendant; but mere possession or use thereof, it not being obviously a nuisance, and having been erected many years before by defendant's grantor, and not having been changed or altered or interfered with by defendant, in the absence of notice that the embankment caused damage to the plaintiff, or a request to remove it, would not make the defendant liable. Woodman v. Tufts, supra, Johnson v. Lewis, supra, and Pillsbury v. Moore, 44 Me. 154, were cases where the defendant continued the use of the structures erected by their grantors, claimed to be nuisances, and yet it was held that, before an action could be maintained, they were entitled to notice. To the same effect was Plumer v. Harper, 3 N. H. 88; Pierson v. Glean, 14 N. J. Law, 36; Hubbard v. Russell, 24 Barb. 404. The above authorities are cited and considered in the opinion of Earl, J., in Ahern v. Steele, supra. In the absence of notice, and under the circumstances shown in this case, it would be unreasonable and unjust to hold the defendant liable for the alleged nuisance. When it purchased, it found a mound or embankment on its premises, placed there many years before by defendant's grantors, and which, as far as appears, had remained ever since without objection. As above suggested, it had the right to suppose that the construction of said embankment was authorized, and was not compelled to know that it injured the plaintiff.

For the reasons above suggested, as well as the statement of the plaintiff's counsel, made when he was offering evidence to sustain his cause of action, that "it is perfectly immaterial, in my view of the case, whether this defendant used that, or whether it did not use it. That is not the gravamen of the action. The gravamen is that this bridge did not furnish sufficient waterway, and therefore it turned, and ran over the plaintiff's land. If the water had not been turned out of the channel by reason of the narrowness of the bridge, and its insufficiency, the plaintiff would not have been injured,"—I think the trial court was justified in holding and in instructing the jury that the defendant was not responsible for damages caused because of the embankment; that the case was to be determined as if the embankment had been a natural hill or elevation. The plaintiff, in his complaint, did not intend to claim the defendant's liability for damages caused by the embankment, as he failed to allege a state of facts which would have made it responsible therefor. The claim on account of the embankment was evidently an afterthought, occurring to him after he had rested, and while the defendant was offering its evidence, and when the testimony proposed could have been properly excluded by the court, for the reason that it was offered too late. I have carefully examined the other exceptions by the appellant

In my opinion, they, or neither of them, require us to reverse the judgment, and grant a new trial.

The judgment should be affirmed, with costs. All concur, except LANDON, J., dissenting.

LANDON, J. (dissenting). The bridge was an obstruction to the natural flow of the water, because it clogged up the bed of the stream with its seven tiers of piling between the abutments. These piles were a standing notice to the defendant that it was obstructing the natural flow of the stream. Whether the old embankment of the railroad was a natural hill or a structure maintained by the defendant, it was a standing notice to the defendant that, when the stream was high, the more dangerous its bridge obstructions would become. The defendant had no right to use its property to the injury of the legal right of the plaintiff, and I think it did use it with notice that it thereby risked doing injury to the plaintiff. See opinion in Moody v. Village of Saratoga Springs (to be decided herewith) 45 N. Y. Supp. 365.

I advise reversal.